IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**MICHAEL DON GREEN**                                                                              **PLAINTIFF**

        **V.**                           **NO.  2:08-CV-02048-RTD**

**KIMBERLY BEAUMONT and**
**KEVIN BEAUMONT**
**THOMAS SCHEER,**
**JARAI & SCHEER CORP., and**
**UNKNOWN DEFENDANTS**                                          **DEFENDANT**

<u>Report and Recommendation</u>

Before the court is Defendant Jarai &Scheer Corporation's Motion for Summary Judgment (Doc. 97) filed December 11, 2009 and the Plaintiff has filed his Response (Doc. 125) on February 22, 2010 and the matter is now ready for disposition.

**Background:**

Plaintiff Michael Don Greene filed this lawsuit (Doc. 1) on May 20, 2008, against Defendants Kimberly Beaumont and Kevin Beaumont, alleging breach of contract and fraud with respect to various dubious investments made by Greene with the Beaumonts. Greene also named various "unknown respondents" in his original complaint.

Plaintiff filed his amended complaint (Doc. 21) on January 15, 2009, adding Scheer and J&S as defendants.  The Plaintiff asserted that from November 2001 to September 2004 the Plaintiff contracted with "respondents, acting as a financial placement service, to purchase certain investments for the benefit of plaintiff. That the investment were to consist of certificates of deposit, private and public stock, and to invest in diamond commerce.  (Doc. 21, p. 2)

Defendants THOMAS SCHEER and JARAI & SCHEER CORP. have moved for

Summary Judgment (Doc. 97) and have asserted that no agency relationship existed between the Beaumonts and the Thomas Scheer or J&S.

Discovery has been complicated in part because the Plaintiff was convicted of tax evasion on September 1, 2005 and was incarcerated immediately (Doc 99-4, p. 98) and is currently incarcerated at the Federal Prison Camp La Tuna. The Defendants Kimberly Beaumont and Kevin Beaumont are, evidently, targets of a federal investigation.

**Discussion:**

A court properly grants summary judgment when, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, it is clear no genuine issue of material fact remains and the case may be decided as a matter of law. Fed.R.Civ.P. 56(c). *See Fletcher v. Conoco Pipe Line Co.* 323 F.3d 661, 666 (C.A.8 (Mo.),2003). The question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id. Julin v. TCI Cablevision, Inc.* 866 F.2d 1064, 1065 (C.A.8 (Mo.),1989).

**Scheer Defendants Motion for Summary Judgment as to Agency:**

Defendant Thomas Scheer, a diamond dealer in New York, has provided an affidavit that "co-defendants Kimberly Beaumont and Kevin Beaumont never had express authority from either myself or any person affiliated with Jarai and Scheer Corporation to act as our agents." (Doc. 71-1, p. 1).

Defendant Thomas Scheer and J&S also submitted Request for Admission to Defendants Kimberly and Kevin Beaumont as follows:

> REQUEST 22: Admit respondent (Beaumont) represented to plaintiff that

respondent was a buyer/seller of diamonds as a representative for Thomas Scheer d.b.a. Jarai & Scheer Corporation, New York, NY.

RESPONSE TO REQUEST 22: Denied.

Defendant Kimberly Beaumont stated that the only person's she dealt with as an affiliate/agent/broker/buyer/dealer/control person/seller/, or otherwise was Nelson Bayford and Ron Markham. (Doc. 99-1, p. 3) Ms. Beaumont also stated that any offerings that she made were made through Omni Corp and other office workers but, claiming her fifth amendment rights, she declined to answer by what authority she could make such offering. (Id.)

Defendant Thomas Scheer and J&S also submitted Interrogatories to Defendants Kimberly and Kevin Beaumont as follows:

> INTERROGATORY30: Identify all documents relating to respondent Beaumonts agency relationship with Jarai and Scheer Corporation and if respondents contend no agency relationship describe in detail respondent Beaumont's relationship with Jarai and Scheer Corporation (J&S).
>
> RESPONSE TO INTERROGATORY 30: See answer to Interrogatory #12.[1] No agency relationship existed. Thomas Scheer is a business partner of my cousin.
>
> INTERROGATORY31: Identify from on or about November 2001 to August 2006 all communications between respondent Beaumonts and J&S relating to Beaumonts marketing diamonds as a representative of J&S.
>
> RESPONSE TO INTERROGATORY 31: No such communications exist.
>
> INTERROGATORY32: Identify from on or aboutNovember2001 to August 2006 all communications between respondent Beaumonts and J&S relating to Beaumonts buying diamonds acting as a representative of J&S.
>
> RESPONSE TO INTERROGATORY 32: No such communications exist.

---

[1] Defendant claimed that all documents she had were destroyed in a fire in 2005 or seized by the IRS. This response was asserted whenever requests for documents were made.

>INTERROGATORY 33: Describe with what authority respondent Beaumonts represented to plaintiff to be representative of J&S.
>
>RESPONSE TO INTERROGATORY33: Objection, this question assumes facts that are not true.
>
>INTERROGATORY34: Identify from on or about November2001 to August 2006 any payments received by respondent Beaumonts from Thomas Scheer or J&S.
>
>RESPONSE TO INTERROGATORY 34: None.
>
>INTERROGATORY 35: Identify all communications on or about July 1, 2004, relating to a diamond purchase from Anchor Corporation, Angola, including communications between Anchor and respondent Beaumonts, between Beaumonts and J&S, between Beaumonts and Plaintiff.
>
>RESPONSETOINTERROGATORY35: Anchor was an alleged courier service, but it wrongfully absconded with $10,000.· Communications would have been by emails from 2004, and those emails no longer exist.

At the Plaintiff's deposition the Plaintiff stated that he spoke to Mr. Scheer one time but did not remember the year and did not remember what they talked about. The Plaintiff was asked what he based his information on that Kimberly Beaumont was an agent to Thomas Scheer or J&S and he responded that he did not know what he based that on (Doc. 99-4, p. 75) but she did represent herself to be an agent of J&S but he could not remember when or where that occurred. (Id., p. 82-83). The Plaintiff testified that he got certain document from "respondents" (Id. , p. 78) and the Plaintiff had previously produced the following:

>(a) Irrevocable Documentary Letter of Credit dated February 26, 2004. (Doc. 125-1)
>
>(b) Letter from Micomiconic Financial Management Ltd. dated March 3, 2004. (Doc. 46-2)
>
>(c) Gemini Freight Invoice No. 071382761 dated July 1, 2004, attached as

      Exhibit C-3 to the Affidavit of Thomas Scheer;

      (d) Joint Venture Agreement No. KB1709 JPH, dated August 15, 2004. (Doc. 46-2)

      (e) Amendment to Irrevocable Documentary Letter of Credit dated February 27, 2004.(Doc. 46-2)

      (f) Handwritten letter to Kim, undated, presumably written by Plaintiff Michael Don Greene, attached as Exhibit C-6 to the Affidavit of Thomas Scheer;

      (g) E-mail correspondence from Plaintiff Michael Don Greene to Kimberly Beaumont, dated January 13, 2005, attached as Exhibit C-7 to the Affidavit of Thomas Scheer;

      (h) E-mail correspondence from Kimberly Beaumont to Plaintiff Michael Don Greene, dated November 4, 2004, attached as Exhibit C-8 to the Affidavit of Thomas Scheer; and

      (I) Letter from Kimberly Beaumont to the Manager of City National Bank, Ltd., Ireland, dated February 22, 2004, attached as Exhibit C-9 to the Affidavit of Thomas Scheer.

      Ordinarily, agency is a question of fact to be determined by a jury. *Undem v. First Nat'l Bank*, 46 Ark. App. 158, 879 S.W.2d 451 (1994). However, where there are facts that are undisputed, and only one inference can be reasonably drawn from them, it becomes a question of law appropriate for summary judgment. *Id.* at 163, 879 S.W.2d at 453.

      There are two types of authority that can create an express agency relationship: actual authority and implied authority. *Arkansas Valley Feed Mills*, 171 F.Supp. at 157. The Restatement of Agency provides that an agent acts with actual authority when, at the time of taking action, the agent reasonably believes, in accordance with the principal's manifestations, that the principal wishes the agent to so act. RESTATEMENT (THIRD) OF AGENCY, § 2.01.

Actual authority has nothing to do with a third party's belief. Both Thomas Scheer and Kimberly and Kevin Beaumont has expressly denied any agency relationship existed and there is no document showing an agency relationship.

Implied authority is the other type of express agency relationship, and is given implicitly by a principal to an agent. *Standard Pipeline Co. v. Haynie Constr. Co., 174 Ark. 332, 295 S.W. 49 (1927)*. Agency may be implied from the apparent relations and conduct of the parties. *Williams Mach. & Fabrication, Inc. v. McKnight Plywood, Inc.* 64 Ark.App. 287, 290, 983 S.W.2d 453, 455 (Ark.App.,1998) Authority of an agent is implied if, from the statements of the principal and agent, their conduct, and other relevant circumstances, it appears that the intent of the parties was to create a relationship by permitting the assumption of authority by the agent. *Standard Pipeline Co. v. Haynie Constr. Co.,* Id. See also 2A CJS AGENCY § 136 (August 2009). The Arkansas Supreme Court has held that the element of control, however, must be exercised by the principal. See *Evans v. White*, 284 Ark. 376, 682 S.W.2d 733 (1985) and *Campbell v. Bastian*, 236 Ark. 205, 365 S.W.2d 249 (1963). ( holding we adopted the definition of agency contained in the Restatement (Second) of Agency. We said the two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal and (2) that the agent act on the principal's behalf and be subject to the principal's control. In *Hinson v. Culberson-Stowers Chevrolet, Inc*., 244 Ark. 853, 427 S.W.2d 539 (1968), we examined the Restatement definition together with a quote from 2 Am.Jur. 13, Agency § 2 and concluded that the essential elements for a showing of the agency relationship were authorization and control. Id. at 855, 427 S.W.2d at 541-42).

The burden of proving an agency relationship lies with the party asserting its existence.

*B.J. McAdams, Inc. v. Best Refrigerated Express, Inc.*, 265 Ark. 519, 579 S.W.2d 608 (1979).

The Plaintiff testified that he only spoke with Defendant Scheer only one time.  He could not remember when and could not remember what it was about. (Doc. 99-4, p. 75). It appears that he partially asserts his claim to an agency relationship because of the Joint Venture Agreement No. KB1709 JPH (Doc. 71-2),  a letter from Micomiconic to Kimberly Beaumont c/o Jarai Scheer, 580 Fifth Avenue, New York, New York 10036. (Doc. 46-2) and an Irrevocable Documentary letter of Credit. (Doc. 125-1, p. 1-3).

The following Interrogatories relate to the joint venture agreement:

INTERROGATORY36: Identify all communications on or about August15, 2004 relating to Joint Venture Agreement No. KB1709 JPH (Doc. 71-2) involving J&S and Plaintis Oil & Mineral Holdings, LLC (POMH), including communications between POMH and respondent Beaumonts, between Beaumonts and J&S, between J&S and POMH, and between Beaumonts and plaintiff.

RESPONSE TO INTERROGATORY 36: Went to DRC at request of Texas Oil Co (actually Plaintis Oil and Mineral Holdings LLC). This company called me regarding a possible business deal related to diamonds in DRC. However the deal never came to fruition.

INTERROGATORY 37: Describe with what authority respondent Kimberly Beaumont acted as legal representative of J&S to execute the joint venture agreement referred to in Interrogatory 36.

RESPONSE TO INTERROGATORY 37: **Objection, calls for legal conclusion.  Objection, this question assumes facts that are not true**.

The following Interrogatories appear to relate to the letter of credit:

INTERROGATORY 38: Identify all communications on or about February 26, 2004, relating to a Letter of Credit secured by respondents Beaumonts acting as a representative of J&S, to the beneficiary DMEXCHANGE S.P.R.L., between J&S and DMEXCHANGE, between J&S and Beaumonts, and between Beaumonts and plaintiff.

>RESPONSE TO INTERROGATORY 38: See answers to Interrogatory #12. **Objection, this question assumes facts that are not true**.
>
>INTERROGATORY 39: Describe with what authority respondent Kimberly Beaumont had to secure the Letter of Credit referred to in Interrogatory 38 as a representative of J&S.
>
>RESPONSE TO INTERROGATORY 39: **Objection, this question assumes facts that are not true**.  (Doc. 99-1, p. 8-10)

When the moving party has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 at 586 (1986).  Plaintiff must come forward with "specific facts showing a genuine issue for trial" and not rely merely on allegation or denial in his own pleading.  FED.R.CIV.P. 56(e).

The factual issue is whether Kimberly Beaumont was acting as an agent for J&S Corporation or Thomas Scheer when she "solicited Plaintiff to invest funds in diamond commerce". (Doc. 1, p.7)

Defendant Kimberly Beaumont acknowledged that she knew Thomas Scheer in that Thomas Scheer was a business partner of her cousin.  (Doc. 99-1, p. 8).  While the Joint Venture Agreement is not signed by Thomas Scheer it is signed by "Mrs. Kimberly Beaumont: Legal representative of Jarai Scheer Corporation" (Doc. 71-2, p. 11) and the date of the document appears to be August 15, 2004.  While the representations of Plaintiff alone would not be sufficient there are additional pieces of evidence that causes some concern to the court.  The Applicant Box in the  Irrevocable Documentary Letter of Credit, dated February 28, 2004 contains the following:

>Kimberly Beaumont

>   Jarai Scheer
>   ???[2] Fifth Avenue
>   New Your 10036
>   USA

The Beneficiary box in the Letter of Credit states as follows:

>   DMECCHANGE ?.P.R.L.
>   ??? CO? Des Avenues
>   Ebaya et das Marais
>   Galerie Cassope
>   Congo

There is also a letter from what purports to be a bank in the Commonwealth of Dominica dated March 3, 2004 and addressed as follows:[3]

>   To Kimberley Beaumont
>   Jarai Scheer                    Ref: M/s A. L. Kalogeros
>   580 Fifth Avenue                DMEXCHANGE S.P.R.L.
>   New York, New York 10036

In addition there appears to be a Gemini Freight Invoice No. 071382761 dated July 1, 2004 which, according to the Plaintiff's deposition, states that "we will use Jarai Scheer (inaudible) U.S.A for the KPC and the pre shipment certificates. The parcel will be sealed by the Anglo –Angolan Diamond Board." (Doc. 99-4, p. 85).

The Plaintiff also testified about an email that he received from Kimberly Beaumont on November 4, 2004 (Doc. 99-4, p. 89). The court does not have the email but it was referred to in the deposition and Kimberly Beaumont stated the "I'm making a quick trip to New York City on Saturday to meet with E., a gentleman by the name of Eugene Cock (phonetic), who was coming

---

[2] Items marked with a "?" cannot be read by the court.

[3] The court notes that this letter seems to be sent by email.

in and also to talk with Thomas Scheer about the joint venture agreement contract and getting ready for those shipments. Eugene will have our first order" (Id., p. 90).

The court cannot say that the facts in this case are undisputed or that the facts are so one-sided that one party must prevail as a matter of law. The relationship between Kimberly Beaumont and Thomas Scheer remains questionable in light of the alleged correspondence between third parties and J&S.

**Scheer Defendants Motion for Summary Judgment as to Statute of Limitations:**

The Beaumont Defendants have also moved for Summary Judgment (Doc. 97) contending that the Statute of Limitations has expired on the Plaintiff's claim. In their Brief (Doc. 98) they contend the "statute of limitations for all of Greene's causes of action is three years. The latest act giving rise to a claim occurred in 2004, requiring a lawsuit to be filed in 2007. Greene filed his lawsuit in 2008 but alleges the statutes of limitation were tolled by fraudulent concealment.

The statute of limitations for unwritten contracts is three years. ARK. CODE ANN. § 16-56-105. The statute of limitations for fraud is also three years. ARK. CODE ANN. § 16-56-105; *Scollard v. Scollard*, 329 Ark. 83, 947 S.W.2d 345 (1997). *See also Highland Indus. Park, Inc. v. BEI Defense Systems Co.*, 357 F.3d 794, 796 (8th Cir. 2004) (applying Arkansas law for statute of limitations disputes).

"Fraud does suspend the running of the statute of limitations, and the suspension remains in effect until the party having the cause of the action discovers the fraud or should have discovered it by the exercise of reasonable diligence." (Emphasis in original; citations omitted). *Talbot v. Jansen*, 294 Ark. 537, 744 S.W.2d 723 (1988). *See also Walters v. Lewis*, 276 Ark.

286, 634 S.W.2d 129 (1982); *Carter v. Zachary,* 243 Ark. 104, 418 S.W.2d 787 (1967); *Williams v. Purdy*, 223 Ark. 275, 265 S.W.2d 534 (1954).

When the running of the limitations period is raised as a defense, the defendant has the burden of affirmatively pleading this defense. However, once it is clear from the face of the complaint that the action is barred by the applicable limitations period, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was in fact tolled. *Cleveland v. Gravel Ridge Sanitary Sewer Imp. Dist*. No. 213, 274 Ark. 330, 625 S.W.2d 446 (1981); *Rasmussen v. Reid*, 255 Ark. 1064, 505 S.W.2d 222 (1974); *Alston v. Bitely*, 252 Ark. 79, 477 S.W.2d 446 (1972).

When the Scheer Defendants attempted to question the Plaintiff about the specific allegations of fraud his answer was "I'll refer you to the pleadings" (Id., p. 99).

The court does note that the Plaintiff alleges in his Amended Complaint that "[I]n or about April 2002 respondents as general agents, or otherwise, for principal, Thomas Scheer d/b/a Jarai and Scheer Corporation (J&S), New York, NY, a diamond importer/wholesaler, by electronic communication and telephone, offered and sold shares of private stock in African Mining Corporation (AMC) to plaintiff." (Doc. 21, ¶12). The Plaintiff further asserts that after he delivered certain sums of money to "respondents" that "in or about December 2003 (respondents) informed plaintiff that AMC no longer actively mining and that plaintiff's investment not available." (Id., p. 7).

The Plaintiff also alleges in his complaint that in January 2003 the "respondents" solicited plaintiff to invest funds in diamond commerce and that between January 2003 to September 2004 the plaintiff did contribute $252,383 toward the venture. (Doc. 21, ¶ 13).

The Plaintiff also produced and testified about an email that he received from Kimberly Beaumont on November 4, 2004 (Doc. 99-4, p. 89). The court does not have the email but it was referred to in the deposition and Kimberly Beaumont stated the "I'm making a quick trip to New York City on Saturday to meet with E., a gentleman by the name of Eugene Cock (phonetic), who was coming in and also to talk with Thomas Scheer about the joint venture agreement contract and getting ready for those shipments. Eugene will have our first order" (Id., p. 90).

The Plaintiff testified that the representations that Kimberly Beaumont was an agent of Thomas Scheer and J&S was done verbally (Id., p. 93) and it is clear that Ms. Beaumont produced an array of document supporting an alleged diamond venture. See Joint Venture Agreement (Doc. 71-2), Irrevocable Documentary Letter of Credit (Doc. 125-1, p. 1-3), Micomiconic letter dated March 3, 2004 (Doc. 46-2) along with the Gemini freight invoice and her emails.

The Plaintiff states in his complaint that in "August 2006 'respondents' failed to respond to plaintiff's written demand to deliver AGMC stock certificates at which time plaintiff began his due diligence to investigate all the investments purchased from respondents and discovered Markam had been indicted by the Justice Department for fraudulent sales of stock in AGMC, that the SEC had filed a civil complaint for fraudulent sales of stock in AGMC, and that the British Columbia Securities Commission had sanctions Markham for trading unregistered AGMC securities." (Doc. 21, p. 11) The Plaintiff could not produce the demand letter he referred to in the complaint but admitted that the letter was written after he was incarcerated. (Doc. 99-4, p. 100)

The fact that fraud occurred does not seem disputed by the Scheer Defendants but the

question is when the Plaintiff discovered the fraud or should have discovered it by the exercise of reasonable diligence.  See  *Talbot v. Jansen*, 294 Ark. 537, 744 S.W.2d 723 (1988). *See also Walters v. Lewis*, 276 Ark. 286, 634 S.W.2d 129 (1982); *Carter v. Zachary,* 243 Ark. 104, 418 S.W.2d 787 (1967); *Williams v. Purdy*, 223 Ark. 275, 265 S.W.2d 534 (1954).

It is clear from the pleadings that the Plaintiff admits that he discovered the fraud on August 6, 2006 but the question remains if a reasonable person would have discovered the fraud between November 2004 and the August 6, 2006 date since the complaint was filed on May 20, 2008.  The court believe that is a significant factual dispute concerning whether a reasonable person should have been aware of the fraud prior to August 6, 2006 and when that date would be.

**Conclusion:**

Based upon the forgoing I recommend that the Scheer Defendants  Motions for Summary Judgment (Doc. 97) be **DENIED.**

**The Petitioner shall have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 26th day of February 2010.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE