IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**MICHAEL DON GREEN**                                                        **PLAINTIFF**

     V.                     NO. 2:08-CV-02048-RTD

**KIMBERLY BEAUMONT and
KEVIN BEAUMONT
THOMAS SCHEER,
JARAI & SCHEER CORP., and
UNKNOWN DEFENDANTS**                                    **DEFENDANT**

<u>**Report and Recommendation**</u>

      Before the court is Defendants Kimberly and Kevin Beaumont's Motion for Summary Judgment (Doc. 109) filed December 15, 2009 and Motion for Sanctions (Doc. 124) filed February 22, 2010. Plaintiff has filed his Response (Doc. 130) on March 2, 2010 and the matter is now ready for Report and Recommendation.

**Background:**

      Plaintiff Michael Don Greene filed this lawsuit (Doc. 1) on May 20, 2008, against Defendants Kimberly Beaumont and Kevin Beaumont, alleging breach of contract and fraud with respect to various dubious investments made by Greene with the Beaumonts. Greene also named various "unknown respondents" in his original complaint.

      Plaintiff filed his amended complaint (Doc. 21) on January 15, 2009, adding Thomas Scheer and J&S as defendants. Thomas Scheer is a diamond dealer in New York, New York. The Plaintiff asserted that from November 2001 to September 2004 the Plaintiff contracted with "respondents, acting as a financial placement service, to purchase certain investments for the benefit of plaintiff. That the investment were to consist of certificates of deposit, private and

public stock, and to invest in diamond commerce. (Doc. 21, p. 2)

Defendants **KIMBERLY BEAUMONT and KEVIN BEAUMONT** have moved for Summary Judgment (Doc. 109) and have asserted that the statute of limitations has run on the Plaintiff's claim and that no contract existed between the parties. (Doc. 101). Defendants **KIMBERLY BEAUMONT and KEVIN BEAUMONT** have also moved for sanctions (Doc. 124) against the Plaintiff as a result of his improper responses at his deposition.

Discovery has been complicated in part because the Plaintiff was convicted of tax evasion on September 1, 2005 and was incarcerated immediately (Doc 99-4, p. 98) and is currently incarcerated at the Federal Prison Camp La Tuna and the Beaumont Defendants are, evidently, targets of an ongoing federal investigation.

**Discussion:**

A court properly grants summary judgment when, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, it is clear no genuine issue of material fact remains and the case may be decided as a matter of law. Fed.R.Civ.P. 56(c). *See Fletcher v. Conoco Pipe Line Co.* 323 F.3d 661, 666 (C.A.8 (Mo.),2003). The question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id. Julin v. TCI Cablevision, Inc.* 866 F.2d 1064, 1065 (C.A.8 (Mo.),1989).

**Statute of Limitations:**

The Beaumont Defendants have moved for Summary Judgment (Doc. 109) contending that the Statute of Limitations has expired on the Plaintiff's claim. In their Brief (Doc. 101) they contend the "statute of limitations for all of Greene's causes of action is three years. The latest

act giving rise to a claim occurred in 2004, requiring a lawsuit to be filed in 2007. Greene filed his lawsuit in 2008 but alleges the statutes of limitation were tolled by fraudulent concealment.

The statute of limitations for unwritten contracts is three years. ARK. CODE ANN. § 16-56-105. The statute of limitations for fraud is also three years. ARK. CODE ANN. § 16-56-105; *Scollard v. Scollard*, 329 Ark. 83, 947 S.W.2d 345 (1997). *See also Highland Indus. Park, Inc. v. BEI Defense Systems Co.*, 357 F.3d 794, 796 (8th Cir. 2004) (applying Arkansas law for statute of limitations disputes).

"Fraud does suspend the running of the statute of limitations, and the suspension remains in effect until the party having the cause of the action discovers the fraud or should have discovered it by the exercise of reasonable diligence." (Emphasis in original; citations omitted). *Talbot v. Jansen*, 294 Ark. 537, 744 S.W.2d 723 (1988). *See also Walters v. Lewis*, 276 Ark. 286, 634 S.W.2d 129 (1982); *Carter v. Zachary,* 243 Ark. 104, 418 S.W.2d 787 (1967); *Williams v. Purdy*, 223 Ark. 275, 265 S.W.2d 534 (1954).

When the running of the limitations period is raised as a defense, the defendant has the burden of affirmatively pleading this defense. However, once it is clear from the face of the complaint that the action is barred by the applicable limitations period, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was in fact tolled. *Cleveland v. Gravel Ridge Sanitary Sewer Imp. Dist*. No. 213, 274 Ark. 330, 625 S.W.2d 446 (1981); *Rasmussen v. Reid*, 255 Ark. 1064, 505 S.W.2d 222 (1974); *Alston v. Bitely*, 252 Ark. 79, 477 S.W.2d 446 (1972).

At the Plaintiff's deposition the Beaumont Defendants first asked the Plaintiff a series of questions concerning paragraph 6 of the Plaintiff's complaint which contained general

allegations that the Plaintiff invested funds with the "respondents" between November 2001 and September 2004.  The questioning by the Beaumont Defendants attorney during the deposition consisted of 13 pages and covered virtually each sentence of paragraph six.  The Plaintiff responded "I'll refer you to the pleadings" or "I've answered your question" to most of the Defendants attorney's questions.  (Id., p. 6-19).

The Plaintiff has now attached copies of certain document pertaining to questions put to him during the deposition. (Doc. 130).  These include his wire transfers of funds from his Bank of America account to Omnicorp dated November 23, 2001 for $95,000 and another dated November 16, 2001 for $95,000,  (Doc. 130-2) and a wire transfer from the Bank of Oklahoma to The Garrison Society for $85,000 sent November 12, 2002 (Doc. 130-11). The Plaintiff has also attached an email from K. Beaumont to the Plaintiff dated March 13, 2003 which appears to give a status report concerning several ongoing investments (Doc. 130-4); a letter dated April 22, 2002 signed by K. Beaumont acknowledging the CD (Doc. 130-5); an email from Dan F. To Kimberly & Kevin Beaumont dated January 10, 2003 which discusses Omnicorp (Doc. 130-16); an email from K. Beaumont to Plaintiff dated April 6, 2003 discussing the CD and problems at Omnicorp (Doc. 130-10); an email from K. Beaumont to the Plaintiff dated April 16, 2003 discussing the problem at Omnicorp (Doc. 130-15);  an email from K. Beaumont to the Plaintiff dated April 12, 2006 which seems to list expenses that K. Beaumont incurred in pursuing the various investments for the Plaintiff (Doc. 130-13); and an email from K. Beaumont to an "undisclosed recipient" dated September 13, 2004 appearing to discuss a transaction in Angola (Doc. 130-14).

In Paragraph 7 of his Amended Complaint the Plaintiff alleges that the "respondents" sold

Plaintiff a CD issued by Ominicorp Banx Inc. located in St. Vincent for $270,000 and never received the CD.  (Doc. 21, ¶ 7).  The Plaintiff has now attached copies of certain document pertaining to questions put to him during the deposition  (Doc. 130) which were discussed above.

The Defendants attorney attempted to ask the Plaintiff about this paragraph beginning at page 19 of his deposition and going through page 41 and, in general, the Plaintiff's responses were "I'll refer you to the pleadings" or "I've answered your question."  (Doc. 99-4, p. 19-41). It cannot be disputed that the Plaintiff's answers were unresponsive to the Defendants questions. The Defendant has filed a Motion to Compel (Doc. 124 referencing Doc. 103 & 104) which will be dealt with subsequently.

The Plaintiff also alleges in his complaint that in January 2003 the "respondents" solicited plaintiff to invest funds in diamond commerce and that between January 2003 to September 2004 the plaintiff did contribute $252,383 toward the venture.  (Doc. 21, ¶ 13).

The Plaintiff also produced and testified about an email that he received from Kimberly Beaumont on November 4, 2004 (Doc. 99-4, p. 89).  The court does not have the email but it was referred to in the deposition and Kimberly Beaumont stated the "I'm making a quick trip to New York City on Saturday to meet with E., a gentleman by the name of Eugene Cock (phonetic), who was coming in and also to talk with Thomas Scheer about the joint venture agreement contract and getting ready for those shipments.  Eugene will have our first order" (Id., p. 90).

The Plaintiff testified that the representations that Kimberly Beaumont was an agent of Thomas Scheer and J&S was done verbally (Id., p. 93) and it is clear that Ms. Beaumont produced an array of document supporting an alleged diamond venture.  See Joint Venture Agreement (Doc. 71-2), Irrevocable Documentary Letter of Credit (Doc. 125-1, p. 1-3),

Micomiconic letter dated March 3, 2004 (Doc. 46-2) along with the Gemini freight invoice and her emails.

The Plaintiff states in his complaint that in "August 2006 'respondents' failed to respond to plaintiff's written demand to deliver AGMC stock certificates at which time plaintiff began his due diligence to investigate all the investments purchased from respondents and discovered Markam had been indicted by the Justice Department for fraudulent sales of stock in AGMC, that the SEC had filed a civil complaint for fraudulent sales of stock in AGMC, and that the British Columbia Securities Commission had sanctions Markham for trading unregistered AGMC securities." (Doc. 21, p. 11) The Plaintiff could not produce the demand letter he referred to in the complaint at his deposition but he admitted that the letter was written after he was incarcerated. (Doc. 99-4, p. 100).  The Plaintiff has produced a letter dated September 14, 2006 which he received from the Beaumont Defendants in his response to discover (Doc. 130-3) and this appears to be the demand letter referred to by the Plaintiff because this letter is a demand to produce stock certificates, certificate of deposit along with a demand for return of funds advanced for the purchase of diamonds.

The question is when the Plaintiff discovered the fraud or should have discovered it by the exercise of reasonable diligence.  See *Talbot v. Jansen*, 294 Ark. 537, 744 S.W.2d 723 (1988). *See also Walters v. Lewis*, 276 Ark. 286, 634 S.W.2d 129 (1982); *Carter v. Zachary,* 243 Ark. 104, 418 S.W.2d 787 (1967); *Williams v. Purdy*, 223 Ark. 275, 265 S.W.2d 534 (1954).

It is clear from the pleadings that the Plaintiff admits that he discovered the fraud on August 6, 2006 but the question remains if a reasonable person would have discovered the fraud between November 2004 and the August 6, 2006 date since the complaint was filed on May 20,

2008.  The court believe that is a significant factual dispute concerning whether a reasonable person should have been aware of the fraud prior to August 6, 2006 and when that date would be.

**Contract:**

The Beaumont Defendants next contend that they should be granted Summary Judgment because there is no showing of a contract between the Plaintiff and the Beaumont Defendants.

Plaintiff filed his amended complaint (Doc. 21) on January 15, 2009, adding Scheer and J&S as defendants.  The Plaintiff asserted that from November 2001 to September 2004 the Plaintiff contracted with "respondents, acting as a financial placement service, to purchase certain investments for the benefit of plaintiff. That the investment were to consist of certificates of deposit, private and public stock, and to invest in diamond commerce.  (Doc. 21, p. 2)

In order to make a contract, there must be a meeting of the minds on all terms, using objective indicators. *Ward v. Williams*, 354 Ark. 168, 118 S.W.3d 513 (2003); *Morgan v. Whorton,* 2005 WL 19483, 2 (Ark.App.) (Ark.App.,2005).

The Plaintiff has now attached copies of certain document pertaining to questions put to him during the deposition (Doc. 130) which were discussed above.

The Plaintiff also alleges in his complaint that in January 2003 the "respondents" solicited plaintiff to invest funds in diamond commerce and that between January 2003 to September 2004 the plaintiff did contribute $252,383 toward the venture.  (Doc. 21, ¶ 13).

The Plaintiff also testified about an email that he received from Kimberly Beaumont on November 4, 2004 (Doc. 99-4, p. 89) which was discussed above.

The objective indicators, sufficient to avoid a Motion for Summary Judgment, point toward some type of arrangement between the Plaintiff and the "Respondents" for their mutual

benefit, where the Plaintiff advanced large sums of money into various investment ventures negotiated by "Respondents" probably Kimberly Beaumont. Genuine issues of material facts exist as to the complete nature of the relationship between the parties and the extent of the individual "Respondents" involvement into each investment.

## Discovery Issue

The Beaumont Defendants have filed a Motion to Compel Discovery (Doc. 124 referencing Doc. 103 & 104) .

It is well-established that the scope and conduct of discovery are within the sound discretion of the trial court. *Marroquin-Manriques v. Immigration and Naturalization Serv.*, 699 F.2d 129, 134 (3d Cir.1983). The Federal Rules of Civil Procedure permit discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Discovery is not limited solely to admissible evidence but encompasses matters which "appear[ ] reasonably calculated to lead to the discovery of admissible evidence." *See id; Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). "Relevance is construed broadly and determined in relation to the facts and circumstances of each case." *Hall v. Harleysville Ins. Co.*, 164 F.R.D. 406, 407 (E.D.Pa.1996).

The Beaumont Defendants attempted to ask the Plaintiff which "Respondent" paragraph six referred to and he responded "It's in the complaint". (Doc. 99-4, p. 7). The clear reading of the complaint is that you cannot tell which "Respondent" the Plaintiff is referring to. In all of the Plaintiff's deposition he never specifically states which "Respondents" are connected to which transactions. After refusing to answer the question the Plaintiff then responds "Sir, I have answered your question". (Id., p. 8). When the Beaumont Defendants attempted to get the terms

of the oral contract that existed between the parties the Plaintiff made the same response telling the attorney to refer to the contract and when the attorney persisted in his question the Plaintiff stated he had answered the question. (Id., p. 10).  The complaint does not state what the terms of the contract were and the Plaintiff never answered the question.  Plaintiff also refused to answer questions concerning his "obligation" which were alleged in the complaint. (Id., p. 11) The Plaintiff also refused to answer question concerning his confidential/fiduciary relationship. (Id., p. 13).  The plaintiff also refused to answer question concerning how he discovered the alleged fraud (Id., p. 13-14) and refused to give any more detail than what was in the complaint. (Id., p.15).  When asked if the "Respondent" in paragraph six included J&S the Plaintiff refused to answer.

      The Beaumont Defendants' attorney finally gave up on paragraph six and moved on to paragraph seven of the Plaintiff's complaint.  The Defendants attorney attempted to ask the Plaintiff about this paragraph beginning at page 19 of his deposition and going through page 41 and, in general, the Plaintiff's responses were "I'll refer you to the pleadings" or "I've answered your question."  (Doc. 99-4, p. 19-41).

      After an attempt by the Defendant's attorney to explain the rules of civil procedure to the Plaintiff and a few additional question the Plaintiff voluntarily left the deposition but after some time did return to answer some of the question presented by the Scheer Defendants attorney.  (Id., p. 65-66).

      After a review of the deposition given by the Plaintiff it is clear that he was non responsive to many crucial questions put to him by the Beaumont Defendants attorney and in violation of the Civil Rules of Procedure.  The Beaumont Defendants have asked to strike the

Plaintiff's complaint or limit his evidence at trial to what was plead.  The court believes these measures, in light of the circumstances of this particular case,  to be extreme and that the Defendants should be allowed to retake the Plaintiff's deposition and that the Plaintiff should be assessed the cost of the initial deposition.

**Conclusion:**

    Based upon the forgoing I recommend that the Beaumont Defendants  Motion for Summary Judgment (Doc. 109) be **DENIED.**

    I further recommend that the Motions for Sanctions be **GRANTED** and that the Plaintiff be assessed the cost of the deposition in the amount of $1,838.75 and that the Beaumont Defendants be allowed to re-depose the Plaintiff.  If another deposition is scheduled the court should approve the date and time and the court shall be available to rule on any discovery disputes that may arise during the deposition.

    **The Petitioner shall have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

    IT IS SO ORDERED this 5th day of March 2010.

    /s/ *J. Marschewski*
    HONORABLE JAMES R. MARSCHEWSKI
    CHIEF U. S. MAGISTRATE JUDGE