IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MICHAEL DON GREEN                                                          PLAINTIFF

V.                                    NO.  2:08-CV-02048-RTD

KIMBERLY BEAUMONT, et al                                                  DEFENDANT

<u>Report and Recommendation</u>

Before the court is Plaintiff's Motion for Partial Summary Judgment as to Kimberly
Beaumont, ECF No. 171, filed August 9, 2010.  The Motion was referred to the undersigned by
Order, ECF No.174, on August 10, 2010.  Defendant Kimberly Beaumont has failed to file a
Response and the matter is now ready for Report and Recommendation.

**Background:**

Plaintiff Michael Don Greene filed this lawsuit, ECF No. 1, on May 20, 2008, against
Defendants Kimberly Beaumont and Kevin Beaumont, alleging breach of contract and fraud with
respect to various alleged investments made by Greene with the Beaumonts. Greene also named
various "unknown respondents" in his original complaint.  The Defendant, Kimberly Beaumont,
filed her Answer, ECF No. 13, on December 15, 2008 denying that a contract with the Plaintiff
existed.

Plaintiff filed his first amended complaint, ECF No. 21, on January 15, 2009, adding
Thomas Scheer and J&S as defendants.  Thomas Scheer is a diamond dealer in New York, New
York.  The Defendant, Kimberly Beaumont, filed her Answer to the Amended Complaint, ECF
No. 26, on January 27, 2009 again denying that a contract with the Plaintiff existed.  The Plaintiff
moved to dismiss the claim as to the Scheer Defendant, ECF No. 160, on June 1, 2010 and the

Scheer Defendant were dismissed by Order, ECF No. 165, on June 10, 2010.

The Plaintiff filed a Second Amended Complaint, ECF No. 168, on July 19, 2010 naming Kimberly Beaumont in her individual and representative capacity for a number of corporations or business entities. Kimberly Beaumont was served on July 22, 2010, ECF No.170-1, but has failed to file an answer.  Plaintiff filed the current Motion for Partial Summary Judgment, ECF No. 171, on August 9, 2010 and Defendant Kimberly Beaumont has failed to file a Response.

**Discussion:**

A court properly grants summary judgment when, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, it is clear no genuine issue of material fact remains and the case may be decided as a matter of law. Fed.R.Civ.P. 56(c). *See Fletcher v. Conoco Pipe Line Co.*  323 F.3d 661, 666 (C.A.8 (Mo.),2003). The question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id. Julin v. TCI Cablevision, Inc.*  866 F.2d 1064, 1065 (C.A.8 (Mo.),1989).

**Breach of Contract**

Under Arkansas law, a contract must include these essential elements: 1) competent parties, 2) subject matter, 3) legal consideration, 4) mutual agreement, 5) mutual obligations. *Price v. Willbanks*, 2009 Ark.App. 849, ---S.W.3d ---- (citing Simmons v. Simmons, 98 Ark.App. 12, 15, 249 S.W.3d 843, 846 (2007)); *Bonds v. Hunt,* (Ark.App.,2010). In order to make a contract, there must be a meeting of the minds on all terms, using objective indicators. *Ward v. Williams*, 354 Ark. 168, 118 S.W.3d 513 (2003); *Morgan v. Whorton,* 2005 WL 19483, 2 (Ark.App.) (Ark.App.,2005).  To have a valid contract, all terms should be definitely agreed

upon. *Madden v. Hart*, 249 Ark. 1054, 463 S.W.2d 352 (1971). It does not follow, however, that the parties must share identical, subjective opinions as to the meanings of the terms. Mutual assent can be based on "objective indicator[s] or agreement." *Crain Indus., Inc. v. Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991). See also *Dziga v. Muradian Business Brokers, Inc*., 28 Ark.App. 241, 773 S.W.2d 106 (1989).

**Count 1:  Ominicorp Bank Deal**

The Plaintiff contends that an he initially was introduced to the Defendant in September 2001 by mutual friends who "stated that she had experience in investment banking" and that she was a "professional investment manager". ECF No. 168, ¶17.  The Plaintiff contends that he spoke by phone with Kimberly Beaumont and in late September 2001 had a face to face meeting in Van Buren, Arkansas and that during that meeting they "specifically discussed their services, their experience, and different types of investments" ECF No. 168, ¶19.  Plaintiff contends the Defendant told him the "general terms and conditions of service" she provided (Id.) but he does not state what all the terms and conditions were other than to say that they included "maintaining regular communication, keeping accurate and complete records of investments, and providing regular accurate and complete account statements to plaintiff". (Id.).

The Plaintiff contends that the contract was formed in October 2001 when the P agreed to "provide funds for investing" and the Defendant was to provide "investment services, accept plaintiff's money to invest, and on plaintiff's demand return plaintiff's principal and gain" and that the D would be "compensated by the seller of the investment in exchange for bringing plaintiff's business to the seller". ECF No. 168, ¶21.

Plaintiff asserts that an oral contract was formed on Nov. 1, 2001 when the parties spoke

-3-

by phone and Defendant offered to purchase a CD issued by Omnicorp.  "It was implied that the standard terms and conditions of the Beaumonts investment service contract would apply."  ECF No.  168, p.10.

The Defendant has denied that she entered into any contract with the Plaintiff,  ECF No. 173-2, p. 1-2, and even refused to admit that she had received $270,000 for the purchase of the certificate of deposit with Omnicorp.  In response to an interrogatory filed by the Scheer Defendants as to whether the Defendant had entered into a contractual relationship with the Plaintiff Kimberly Beaumont stated that the Plaintiff "came and asked to be placed in some of the off shore offerings of Global" but she denied that she had a contract with the Plaintiff. See ECF No. 99-1, p. 2.

It also appears that the Plaintiff sent funds directly from his private bank account to Onmicorp. ECF No. 130-2, p. 1-3. The exact terms of the agreement between the parties is vague and illusory and the Plaintiff has only asserted the terms by conclusory allegations. There is a genuine issue of a material fact concerning the existence of the alleged contract and the specific terms and whether the Defendant complied with the terms.

**Count 2:  Omnicorp Bank Deal No. 2**

The Plaintiff contends that on March 1, 2003the Defendant agreed to "pledge shares of stock" to guarantee the loss of the Plaintiff's investment in Omnicorp.  ECF No. 168, ¶53. The Plaintiff refers to an email allegedly sent by Kimberly Beaumont dated March 13, 2003 as evidence of the alleged phone conversation. ECF No. 130-4.  The email does state that "There are 70,000 at 8.5.  If these do not perform up to there issue price for any reason then Southwinds will be committed to this client only to restore any losses using AGMC, as is within the possible

overrun received by said company". The exact meaning of this clause is unclear and will require evidence to determine the intent of the parties.

**Count 3: American Gold Mining Corporation**

Plaintiff has alleged that he entered into an oral contract with Kimberly Beaumont on December 1, 2001 for the purchase of American Gold Mining Corporation stock, ECF No. 168, ¶67, and gave her $350,000 cash on December 13, 2001 to purchase 36,842 shares. Id., ¶69-70.

Kimberly Beaumont denies that any contract was entered into and has contended that all of her records were either destroyed in a house fire or seized by the Internal Revenue Service. ECF No. 173-1, p. 4. When the Defendant was presented with a Request for Admission that she had picked up $350,000 case from the Plaintiff at a truck stop in Oklahoma she responded "Can neither admit nor deny as the lenght of time and lack of documentation prevent the verification of these details, therefore must deny." ECF No. 173-2, p. 3.

While the Defendant's response is difficult to believe it still present a factual issue for the court concerning whether the Defendant received the funds and, if so, whether she disposed of the funds in accordance with the direction of the Plaintiff.

**Count 4: American Gold Mine Corporation**

The Plaintiff contends that the Defendant phoned him in March 2002 and offered to purchase 68,333 shares of AGMC stock that had just come available and, since Plaintiff was a shareholder already, the offering price was $6.00 per share. ECF No. 168, ¶81. The Plaintiff contends that he meet the defendant again at a truck stop in Oklahoma and tendered to her $410,000 for the purchase of the AGMC stock.

The Defendant again denies that a contract existed or that the Plaintiff gave her $410,000

on the date alleged for the purchase of AGMC stock.  ECF No. 173-2, p. 3.

Clearly a factual dispute exist concerning the existence of the contract between the Plaintiff and the Defendant and whether the alleged funds changed hands for the purchase of AGMC stock and whether such stock was purchased in accordance with the dictates of the Plaintiff.

## Count 5: Trinity Golf Incorporated

The Plaintiff contends that the defendant "offered to purchase 33,333 shares of private corporate stock in Trinity Golf Incorporated for plaintiff" in March 2002 for $100,000.  See ECF No. 173, ¶71.  Plaintiff appears to have wired $100,000 to an account number on March 28, 2002 with a notation that it was for "Trinity Golf".  See ECF No. 173-6, p. 8.  There is no admission by the defendant that a contract exist nor is it clear from the record that the funds which the plaintiff wired to for Trinity Golf went to the defendant or directly to Trinity Golf.

Clearly a factual dispute exist concerning the existence of the contract between the Plaintiff and the Defendant and if the funds were invested as instructed by the Plaintiff.

## Count 6: Global Medical Direct

The Plaintiff contends that on or about February 1, 2002 the Plaintiff and Kimberly Beaumont spoke by phone and that Kimberly Beaumont offered to purchase in plaintiff's name shares of stock in Global Medical Direct. See ECF No. 168, ¶108.  The agreement is denied by the defendant.

The Plaintiff contends that on February 1, 2002 and April 16, 2002 he agreed to purchase 200,000 shares of stock in GMD at $1.00 per share and that he wired $202,550 from his bank account at Bank of Commerce in Oklahoma to the Defendants dba Tropic Waters account #8597

at Nation Commercial Bank, Kingston, St. Vincent as purchase money for the shares of stock in GMC. See ECF No. 168, ¶109-110.

Clearly a factual dispute exist concerning the existence of the contract between the Plaintiff and the Defendant and if the funds were invested as instructed by the Plaintiff.

**Count 7: African Mining Corporation**

The Plaintiff contends that in April 2002 he entered into an oral contract with the Defendant to purchase stock in the African Mining Corporation, See  ECF No. 168, ¶120, and that he agreed to purchase 20% of the stock of AMC for $435,000, (Id., ¶121) and that he paid $198, 418 toward the purchase in April and March 2003. See ECF No. 168, ¶122.  The agreement is denied by the Defendant but it does appear that there were alleged communications between "Richard" and Kimberly and Kevin Beaumont concerning an investment in the African Mining Corporation. See ECF No. 173-6, p. 23-27. There were no admissions by the Defendant concerning the African Mining Corporation investment or the terms of the investment.

Clearly a factual dispute exist concerning the existence of the contract between the Plaintiff and the Defendant and if the funds were invested as instructed by the Plaintiff.

**Count 8: Omnicorp Financial Group**

The Plaintiff contends in this count that the Defendant entered into an oral contract with the Plaintiff in July 2002 in which she agreed to purchase for Plaintiff certain private and public corporate stock held by the Omnicorp Financial Group and that the Plaintiff did deliver to the Defendant $425,000 on August 11, 2002 for the purchase of said stock. See ECF No. 168, ¶132-134.

The Plaintiff also contends that he met with Kimberly Beaumont in December 2004 and

March 2005 and she assured him the OFG stocks were doing fine.  Id., ¶137.  There are no admissions by the Defendant concerning the allegation made by the Plaintiff.

Clearly a factual dispute exist concerning the existence of the contract between the Plaintiff and the Defendant and if the funds were invested as instructed by the Plaintiff.

**Count 9: Diamond Commerce Investment**

The Plaintiff contends that he entered into an oral partnership with Kimberly Beaumont in which he would invest $250,000 and Kimberly Beaumont would purchase and market uncut diamonds and that they would split the profits after expenses.  See ECF No. 168, ¶145.  The Plaintiff contends that between January 2003 and December 2003 the Plaintiff gave to the Defendant $252,383 for the purchase of diamonds under the above agreement. Id., ¶148.

The Plaintiff also contends that Kimberly Beaumont obtained a forty five million dollar letter of credit for the purpose of purchasing the uncut diamonds, Id., ¶149; See ECF No. 125-1, p. 1 and produced a Joint Venture Agreement between Jarai Scheer Corporation and Planitis Oil & Mineral Holdings, LLC. which provided that Planitis Oil and Mineral Holdings would obtain rough diamond concessions from the Democratic Republic of Congo. Id., ¶150.  See ECF No. 71-2, p. 2-11.  The Defendant has made no admission concerning the above documents or the existence of a proposed agreement.  The court does note that certain emails, purporting to be from Kimberly Beaumont to the Plaintiff make reference to the above diamond efforts but the Defendant has not admitted to the emails or making the statements that the Plaintiff attributes to her.

Clearly a factual dispute exist concerning the existence of the contract between the Plaintiff and the Defendant and if the funds were invested as instructed by the Plaintiff.

**Count 10: Specific Diamond Purchase Contract**

The Plaintiff contends that on or about September 12, 2004 he spoke with Kimberly Beaumont and she offered to purchase specific diamonds for $104,000 and that she had "pre-sold" this particular lot of diamonds. Kimberly Beaumont stated that the $104,000 would cover all of the expenses and she and plaintiff would equally divide the profits. Id., ¶158.  The Plaintiff contends that he accepted Ms. Beaumont's offer and sent two wires totaling $104,000 from his account at Bank of the West to Stannic Bank Congo, Kinshasa, DRC as instructed by Kimberly Beaumont. Id., ¶160.

The Defendant has made no admission concerning the above documents or the existence of a proposed agreement.  The court does note that certain emails, purporting to be from Kimberly Beaumont to the Plaintiff make reference to the above diamond efforts but the Defendant has not admitted to the emails or making the statements that the Plaintiff attributes to her.

Clearly a factual dispute exist concerning the existence of the contract between the Plaintiff and the Defendant and if the funds were invested as instructed by the Plaintiff.

Conversion

**Count 11: Conversion concerning Omnibank Corporation**

The Plaintiff contends that the Defendant improperly converted the money he advanced for the purchase of a CD with Omnibank Corp. ECF No. 168, ¶168-177.  He acknowledges that he wired the funds directly to Omnibank, See 130-2, p. 1-3, but contends that it was at the direction of Kimberly Beaumont and that she concealed the trouble that Omnibank was in.

-9-

However, it is clear that an email was sent from the Defendant to the Plaintiff on April 15, 2003 acknowledging that Omnicorp was in serious financial difficulty and that there was pending a "proposal as an alternative to the immediate liquidation of the fund". ECF No. 130-15, p.1.

There is a genuine issue of fact as to the specific agreement between Plaintiff and Defendant and whether the Defendant invested the funds as directed by the Plaintiff.

**Count 12: Conversion concerning American Gold Mining Corporation**

The Plaintiff contends that the Defendant converted the $760,000 he gave her to purchase American Gold Mining Stock by selling the stock and transferring money to accounts the Defendant owned. ECF No. 168, ¶181-182.  The plaintiff has provided no proof for this allegation.  There is a genuine issue of fact as to the specific agreement between Plaintiff and Defendant and whether the Defendant invested the funds as directed by the Plaintiff.

**Count 13: Conversion concerning Trinity Golf**

The Plaintiff contends that the Defendant converted the $100,000 he gave to them to purchase Trinity Golf Incorporated Stock. ECF No. 168, ¶186-192.  His claim in this regard is that the Defendant has failed to account for the funds or show proof that the funds were tendered to Trinity Golf.  The Plaintiff has not offered any proof to substantiate this claim.

The Defendant has asserted that all of her documents, that survived her house fire,  were seized by the Internal Revenue Service.  ECF No. 173-1, p. 2.  Trinity Golf did notify its shareholders on December 1, 2004 that the company was no longer viable.  ECF No. 173-6, p. 9.  The Plaintiff contends in his brief that the Defendant failed to notify the Plaintiff of the notice she had received from Trinity Golf.  Even if this is so it does not mean that the Defendant converted the Plaintiff's funds to her own use, but only establishes that the investment, if made,

was now worthless.

There is a genuine issue of fact as to the specific agreement between Plaintiff and Defendant and whether the Defendant invested the funds as directed by the Plaintiff.

**Count 14: Conversion concerning Global Medical Direct, Inc.**

The Plaintiff contends that the Defendant converted $202,550 that he had delivered to Defendant to invest in Global Medical Direct, Inc.,  ECF No. 168, ¶193-201, because the Defendant failed to purchase stock in his name.  A fact question exist as to whether stock was to be purchased in the Plaintiff's name or not.  An apparent note from Kimberly Beaumont to Plaintiff dated April 22, 2002 states "$100,000 to be placed into Global Medical as funds are available.  Price per share $1.00 equaling 100,000 shares."  ECF No. 130-5, p. 1. It appears that as early as April 2002 the Plaintiff understood that the Global Stock would be purchase under the Southwinds or Tropic Waters account. It also appears that 500,000 shares of Global was purchased in July 2002, ECF No. 173-6, p. 14-15 and an additional 200,000 shares of Global was purchased in October 2002. ECF No. 173-6, p. 16-17.

There is a genuine issue of fact as to the specific agreement between Plaintiff and Defendant and whether the Defendant invested the funds as directed by the Plaintiff.

**Count 15: Conversion concerning African Mining Corporation**

The Plaintiff contends that the Defendant converted $198,418 which Plaintiff tendered to the Defendant to participate in the African Mining Corporation. ECF No. 168, ¶202-211.  The Plaintiff contends the Defendant has never provided documentation of the investment but the court has previously noted that the Defendant contends her papers were seized by the Internal Revenue Service.  The Defendant has not made any admission concerning the Plaintiff's

allegation and a factual question exist.  There is a genuine issue of fact as to the specific agreement between Plaintiff and Defendant and whether the Defendant invested the funds as directed by the Plaintiff.

**Count 16: Conversion concerning Omnicorp Financial Group**

The Plaintiff contends the Defendant converted $425,000 he tendered to the Defendant to purchase a mix of private and corporate shares of stock in OFG's Portfolio and that the Defendant has failed to give a proper accounting. ECF No. 168, ¶212-220.

The Defendant has made no admission concerning the allegation of the Plaintiff.  There is a genuine issue of fact as to the specific agreement between Plaintiff and Defendant and whether the Defendant invested the funds as directed by the Plaintiff.

**Count 17: Conversion concerning the Diamond Commerce Agreement**

The Plaintiff contends the Defendant converted $252,383 he tendered to the Defendant to participate in a diamond mining venture and that the Defendant has failed to give a proper accounting. ECF No. 168, ¶221-229.  It is clear that an investment in the African Mining Corporation was made. ECF No. 173-6, 23-27.  It is not clear what the agreement between the parties was concerning how the investment was to be made or what responsibilities of the Defendant were.

There is a genuine issue of fact as to the specific agreement between Plaintiff and Defendant and whether the Defendant invested the funds as directed by the Plaintiff.

**Count 18: Conversion concerning a Specific Diamond Purchase Agreement**

The Plaintiff contends the Defendant converted $104,000 he tendered to the Defendant to purchase diamonds pursuant to a specific diamond purchase agreement and that the Defendant

has failed to give a proper accounting. ECF No. 168, ¶230-237.  It is not clear what the

agreement between the parties was concerning how the investment was to be made or what

responsibilities of the Defendant were.  There is a genuine issue of fact as to the specific

agreement between Plaintiff and Defendant and whether the Defendant invested the funds as

directed by the Plaintiff.

Deceptive Trade Practice

Counts 19-26

The Plaintiff contends that the Defendant committed deceptive trade practices in regards

to American Gold Mining Corporation (Count 20); Trinity Golf (Count 21); Global Medical

Direct Inc. (Count 22); African Mining Corporation (Count 23); Omnicorp Financial Group

(Count 24); Diamond Commerce Contract (Count 25) and the Diamond Purchase Contract

(Count26).

The Plaintiff alleges the same factual basis as set forth in his breach of contract claims.

The Plaintiff has attached a document which he entitled "Undiputed Material Facts". ECF No.

173.  However many of these facts are disputed and specifically denied in the Defendant's

previous answers to the initial complaint and the first amended complaint.  In addition there are

no admission in the Defendant's Response to Interrogatories of Request for Admission that

justify the alleged facts as being treated as undisputed.  It is also noteworthy that no depositions

have been taken of any of the witnesses or the named defendants.

It is unquestioned that the Plaintiff and the Defendant were engaged in highly speculative

investing but the exact relationship between the parties has not been established by undisputed

facts.  The Plaintiff has amassed a great deal of information which may or may not be admitted at

-13-

trial but which still does not establish the relationship between the parties concerning each and every transaction alleged.

**Conclusion:**

Based upon the forgoing I recommend that the Plaintiff's Motion for Partial Summary Judgment (Doc. 171) be **DENIED.**

**The Petitioner shall have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 10th day of September 2010.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE